**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.    1:21-CV-24151- ALTMAN/Reid**

CRISTINA DESAMOURS,

    Plaintiff,

vs.

IMPACT AUTO DEPOT, INC., and
AUTOMOTIVE CREDIT CORP.,

    Defendants.

_____/

**AMENDED MOTION FOR ENTRY OF FINAL JUDGMENT AFTER DEFAULT**

Plaintiff, Cristina Desamours, an individual ("Ms. Desamours"), by and through her undersigned attorney, pursuant to Rule 55, Federal Rules of Civil Procedure, and pursuant to the Order Setting Hearing or, in the Alternative, Requiring Clarification ("Clarification Order"), entered herein on June 10, 2022 [DE 50], respectfully moves this Court for entry of a default final judgment against Defendant, Impact Auto Depot, Inc., a Florida corporation ("Impact Auto"), and in support thereof would show as follows:

1.    This lawsuit involves a used car dealership selling a single mother a badly damaged late model vehicle with a salvaged title and a tampered odometer (the "Vehicle"). By any objective measure, the dealership unloaded the Vehicle on an unsuspecting customer without any semblance of compliance with federal and state consumer disclosure requirements.

2.    On April 25, 2022, the Clerk of the Court entered a Default against Impact Auto for its failure to plead or otherwise defend the instant action ("Default") [DE 45].

3.    Pursuant to Rule 55, Federal Rules of Civil Procedure, Ms. Desamours is entitled

1

to a judgment against Impact Auto in accordance with the proof submitted herewith.

   4. Pursuant to the Clarification Order, the Court directed that Ms. Desamours provide clarification regarding the amount of damages sought in the instant action. In particular, the Court discerned that in the Motion, Ms. Desamours sought "an award of statutory damages in the amount of $10,000.00 under the Odometer Act" and "an award of actual damages of $4,964.00 under the Florida Deceptive and Unfair Trade Practices Act." However, in the accompanying affidavit of Plaintiff, Ms. Desamours requested the Court "treble the diminution damages and award me the sum of Fourteen Thousand Eight Hundred Ninety-Two and 57/100ths Dollars ($14,892.57)."

   5. To clarify her request for damages, Ms. Desamours seeks judgment **only for statutory damages of Ten Thousand Dollars ($10,000.00)** under Count I for violation of the Federal Odometer Act, 49 U.S.C. §32701, *et seq.* ("Odometer Act"). With respect to her claim for actual damages, Ms. Desamours seeks the sum of Four Thousand Nine Hundred Sixty-Four Dollars ($4,964.00) for violation of Florida Statute §501.201, *et seq.,* known more commonly as the "Florida Deceptive and Unfair Trade Practices Act" (the "FDUTPA").[1]

## MEMORANDUM

### I. STANDARD OF REVIEW AND PROOF

  When a party is in default and the clerk or Court has entered a default, the decision whether to grant a default judgment is within the sound discretion of the district court. *See, Fanning v. Permanent Solution Industries, Inc.*, 257 F.R.D. 4 (D.D.C. 2009); *Microsoft Corporation v. Not*, 549 F.Supp.2d 1233, 1236 (E.D. Ca. 2008). When a default judgment is entered, the Court takes the well-

---

[1] In the belief that the Court will award the actual damages under the FDUTPA, as requested in the instant application, Ms. Desamours will not seek recovery on the remaining state law claims as the recovery is largely duplicative.

pleaded factual allegations of the complaint as true. *See, Direct TV, Inc. v. Hoa Huynh,* 503 F.3d 847, 854 (9th Cir.2007), *cert. denied*, 129 S. Ct. 40 (2008).   In entering a default judgment, the Court must analyze the allegations of the Complaint to confirm that all the elements required for liability have been satisfied. *See, Capitol Records v. Rita Carmichael,* 508 F.Supp.2d 1079, 1083 (S.D. Ala. 2007); *UMJ Recordings, Inc. v. Stewart,* 461 F.Supp.2d 837, 842 (S.D.Ill.2006).

In the instant case, as detailed below, Ms. Desamours has advanced a well-pled Complaint which is supported by substantial case law. Ms. Desamours has filed contemporaneous herewith the following proofs:

- Declaration of Cristina Desamours in Support of Motion for Entry of Final Judgment After Default, dated May 18, 2022, attached as Exhibit "1" ("Desamours Decl."). The Desamours Declaration avers to all facts necessary to support the claim for statutory and actual damages against Impact Auto; and

- Declaration of Stuart Raskin, dated May 16, 2022, attached as Exhibit "2" ("Raskin Decl.")- The Raskin Declaration was provided by Stuart Raskin ("Mr. Raskin"), an I.A.A.A. Certified Automobile, Truck and Specialty Vehicle Appraiser who inspected the Vehicle. Mr. Raskin has opined as to the damages and losses sustained by Ms. Desamours with respect to the Vehicle.

## II.   LEGAL ARGUMENT

### A.   THE DEALERSHIP VIOLATED THE ODOMETER ACT BY MAKING FALSE MILEAGE DISCLOSURES AND BY FAILING TO PROVIDE THE VEHICLE TITLE TO MS. DESAMOURS FOR INSPECTION.

*1. Overview of Odometer Act.*

Congress passed the Odometer Act to prevent fraud in the sale of motor vehicles. The

3

Congressional intent in passing the Act was to prevent odometer tampering and to provide other general safeguards for the protection of consumers. 49 U.S.C. §32701(b). The odometer claims in this lawsuit are based on the Dealership violating the Act's disclosure requirements of 49 U.S.C. §32705, not on a claim of tampering under 49 U.S.C. §32703.

### 2. *The Courts broadly construe and vigorously enforce the Odometer Act.*

The Odometer Act is to be broadly and vigorously applied to accomplish the Act's purposes. "The statute is obviously remedial in nature and should be broadly construed to effectuate its purpose." *Ryan v. Edwards*, 592 F.2d 756, 759-60 (4th Cir. 1979); *Hughes v. Fox*, 814 F.2d 498, 501 (8th Cir. 1987); *Sarratore v. Longview Vehicle Corp.*, 666 F. Supp 1257 (N.D. In. 1987); *Stier v. Park Pontiac*, 391 F. Supp 397 (S.D. W.Va. 1975). A broad construction of the federal Act serves an important public policy. Congress sought to require accurate odometer statements and other pertinent information concerning motor vehicles to penalize those that engage in odometer tampering and related wrongdoing)

As a salient example of the broad scope of the Act, the Act provides for a civil enforcement action without a restriction on the class of persons entitled to sue. 49 U.S.C. §32710. A person suing need not have been damaged; there is a minimum statutory award of $10,000.00 to encourage persons who discover and act on violations. *EVehicles v. Paradise Motors, Inc.*, 1121 F. Supp. 250 (N.D. Ca.1989).

As discussed below, the application of the Act to the facts of the instant case — the marketing and sale of a salvaged vehicle with an inaccurate odometer without disclosure — is especially appropriate.

4

### *3.    The Dealership gave multiple false odometer disclosures.*

The Act's disclosure requirements are central to the Act's effectiveness. Even if a transferor has not tampered with an odometer (in fact, even if an odometer was never rolled back), a transferor may violate the Act by violating the disclosure requirements. *See, Ryan v. Edwards,* 592 F.2d 756, 760 n.4 (4th Cir. 1979) (tampering and disclosure violations are alternative claims under the Act); *Resendiz v. Eatinger*, 1990 WL 84527 (N.D. Ill. June 8, 1990). The Act requires that a person transferring a motor vehicle's title to give the transferee a written disclosure of the mileage registered by the odometer or a disclosure that the mileage is unknown if the transferor knows the mileage registered by the odometer is incorrect. https://library.nclc.org/af/050601-0 - fn946 49 U.S.C. §32705(a).

The content of the required mileage disclosures is essentially the same, whether made on the title, on a power of attorney, on a reassignment document, on a separate disclosure statement, or electronically. *See,* 49 C.F.R. § 580.5(a), (b), (g); 49 C.F.R. §§ 580.13(a), 580.14(b). The transferor discloses the odometer reading at the time of the transfer and whether the reading is accurate. https://library.nclc.org/af/05060601-0 - fn1086 49 C.F.R. § 580.5(c)(1) and (e).

In the instant action, the Dealership made multiple false representations that the mileage was true and accurate. In the initial conversation with Ms. Desamours, the salesman of the Dealership represented to Ms. Desamours the following:

- that the Vehicle was in excellent condition and had no mechanical defects ("First Condition Representation"); and

- that the Vehicle had "*under 70,000 miles*" ("First Mileage Representation").

[Desamours Decl. - ¶6].

Then through the Buyer's Order, the Dealership made the following additional representation as to the mileage of the Vehicle:

| VEHICLE INFORMATION: | | | SALESPERSON: | | |
|---|---|---|---|---|---|
| YEAR: 2017 | COLOR 1: RED | VIN: 5NPE24AF3HH460827 | | STOCK: 10188 | |
| MAKE: HYUNDAI | COLOR 2: | STYLE: SE | | CYL: 4 | |
| MODEL: SONATA | BODY: 4DR | MILEAGE: 67851 | | TRANS: AUTO | |

☐ If this box is checked, the vehicle that you are purchasing has been licensed

("Second Mileage Representation")

[Desamours Decl. - ¶11].

As with the Retail Buyer's Order, the Dealership provided a third affirmative written representation that the "odometer reading" for the Sonata was **67,851:**

| New/Used | Year | Make | Model | Vehicle Identification Number | Mileage | ☒ Personal, Family or Household Use |
|---|---|---|---|---|---|---|
| Used | 2017 | HYUNDAI | SONATA | 5NPE24AF3HH460827 | 67851 | ☐ Business Use |

("Third Mileage Representation")
[Desamours Decl. - ¶22].

The representations as to the condition and milege of the Vehicle were materially false. After investigating the history of the Vehicle, Ms. Desamours learned:

- that the Vehicle had been in a collision with damage on September 4, 2018;

- that the Vehicle was declared a "total loss" by an insurance company because of flood damage on November 8, 2020;

- that the Vehicle had a salvaged title that had a flood brand;

- that the Vehicle had a "not actual mileage" brand; and

- that the mileage of the Vehicle was 96,907 on April 22, 2020.

[Desamours Decl. - ¶31].

On September 30, 2021, as part of her due diligence in learning about the bad car purchased, counsel obtained a copy of the title history for the Sonata from the Florida Department of Highway

6

Safety and Motor Vehicles ("the Sonata Title History"). The Sonata Title History shows that the Sonata had been declared a total loss as a result of flood damage in January 2021. [Desamours Decl. - ¶32-44; Ex. C].

According to the Sonata Title History, the Dealership acquired the Sonata on May 7, 2021, under a Florida certificate of title ("Transfer Title") that had been issued to Alexy Auto Services ("Alexy Auto"), a "salvage motor vehicle dealer" as that term is defined under Fla. Stat. §320.27(1)(c)5.   The Transfer Title showed the following:

- that the Vehicle had been previously declared a total loss vehicle due to damage; and

- that the mileage was "*not actual*."

[Desamours Decl. - Ex. C]

The Dealership knew that it had acquired a salvage car from a rebuilder and that the mileage was not actual. But the Dealership nonetheless lied to Ms. Desamours both verbally and in writing as to same.

A false statement on the disclosure form violates the Act's disclosure requirements. In addition, the Act states that a person who transfers ownership of a vehicle may not "give a false statement to the transferee in making the disclosure required by [NHTSA's odometer disclosure] regulation." https://library.nclc.org/af/0505-0-fn936   This language covers not just false statements made on the disclosure form, but false statements made in connection with making the disclosure. Thus, oral statements, advertising, and written claims found in documents other than the disclosure form are covered, as long as these statements are related to the making of the disclosures. *See, Hughes v. Box,* 814 F.2d 498 (8th Cir. 1987); *Ryan v. Edwards*, 592 F.2d 756 (4th Cir. 1979).

7

In *Ryan*, the Fourth Circuit has found the Act applied to a car dealer's false newspaper advertising that described a car as "low mileage" and to false oral statements concerning mileage. *Id.* at 759. The Court stated: "[a] transferor cannot insulate himself from liability under the statute by completing the odometer disclosure statement correctly, and then contradicting that statement with false oral claims." *Id.*   Here, the multiple false statements- including at least one under penalty of perjury- by the Dealership as to the Vehicle's mileage provide compelling evidence that the Dealership violated the disclosure requirements of the Odometer Act.

### 4. *The Dealership also violated the Odometer Act by concealing the Transfer Title from Ms. Desamours until after the Purchase Transaction was consummated.*

In 1986, Congress amended the Odometer Act to require that the odometer disclosure be made on the title certificate. "The central purpose of [the statute] is to make the title document the sole vehicle for odometer disclosures, thereby completing a years-long movement among the States toward the use of the title for disclosure." See, Supplementary Information to 1991 Final Rule, 56 Fed. Reg. 47,681, 47,684 (1991).   Disclosure on the title was required because "using a separate document for odometer disclosure, which had been common in the early days of the Federal odometer law, had been shown to be too vulnerable to abuse." *Id*.   Thus, with the 1986 amendment, Congress gave the Act an additional "central purpose" by requiring the title document to be the only place for the disclosure under the Act. *See, Owens v. Samkle Automotive, Inc.*, 425 F.3d 1318 (11th Cir. 2005).

In *Owens*, the aggrieved car buyer purchased a used car which had been previously owned by a car rental company. In reversing the district court, the 11th Circuit held that the car dealer had not disclosed the automobile's mileage in writing "on the title," but rather on a separate odometer

8

disclosure statement, in an attempt to conceal from the buyer that her car had been previously owned by a car rental company. *Id.* at 1325.

The dealership in *Owens* argued that the Act required fraudulent intent with respect to the disclosure of mileage. The Court, however, disregarded the argument, reasoning:

> Therefore, to limit private civil suits under Section 32710(a) only to instances where the defendant intended to defraud the victim with respect to the vehicle's mileage runs counter to the purposes of the private civil remedy — to compensate victims for harm suffered *and* to ensure strict compliance with the Odometer Act's provisions. Both purposes are also reflected in the text of Section 32710(a). The violator must make the victim whole, but also must pay an additional price — either double the actual damages or up to $1,500 — as a penalty for violating the Act. 49 U.S.C.§32710(a)(2000). It would therefore be inimical to a private civil remedies function as the Act's primary enforcement mechanism to limit its reach to instances where the defendant intended to defraud its victim "with respect to a vehicle's mileage." Such a reading neither comports with the statute's plain language, nor accords with its remedial purpose.

*Id*.

The 11th Circuit has adopted a more expansive view of the role of the Odometer Act to prevent fraud in motor vehicle sales than other Circuits. As seen above, the Court recognized that the fraud may relate to matters other than the vehicle's mileage. *Contrast, Bodine v. Graco, Inc*. 533 F. 3rd 1145 (7th Cir. 2008); *Iofee v. Skoie Motor Sales, Inc*., 414 F. 3rd 708 (7th Cir. 2005).

**In the instant case, the Dealership violated the disclosure requirements of the Act in two ways.** First, the Dealership made false statements as to the mileage of the Vehicle. Second, the Dealership concealed the higher mileage reported by the prior owner as well as the salvage brand by not showing Ms. Desamours the Transfer Title. Had Ms. Desamours seen the Transfer Title, she would have become aware that the mileage was not accurate, and that the Vehicle had a branded title as seen in *Owens*.

9

### *5. Reckless disregard or gross negligence with respect to*
### *an odometer disclosure satisfies the Act.*

The 11th Circuit has analyzed very few cases involving claims under the Odometer Act. However, other circuits have delved into the criterion and standards under the statute. The Fifth Circuit Case of *Nieto v. Pence*, 578 F.2d 640 (5th Cir. 1978) is illustrative of the majority view. In *Nieto,* the court held that:

> a transferor who lacked actual knowledge may still be found to have intended to defraud and thus may be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown. A transferor may not close his eyes to the truth. If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence.
>
> *Id*. at 642.

Numerous other courts have held that absent actual knowledge, a transferor can still be found to have the requisite intent to defraud if they exhibited gross negligence or a reckless disregard for the truth. *See, e.g., Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d. 1275, 1282 (10th Cir. 1998)*; Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d. 1275, 1282 (10th Cir. 1998); *see also, Tusa v. Omaha Auto. Auction, Inc.*, 712 F.2d 1248, 1253-1254 (8th Cir. 1983); *see also, Ryan v. Edwards,* 592 F.2d 756, 762 (4th Cir. 1979) (holding that constructive knowledge, recklessness, or even gross negligence in determining and disclosing the actual mileage traveled by a vehicle have been held sufficient to support a finding of intent to defraud); *see also Aldridge v. Billips*, 656 F. Supp. 975, 978-979 (W.D. Va. 1987) (concluding that mere reliance on the odometer reading, in the face of other readily ascertainable information from the condition of the vehicle constitutes a reckless disregard that rises to the level of intent to defraud, as a matter of law).

In *Williams v. Toyota of Jefferson, Inc.,* the plaintiff purchased a BMW from the defendant auto dealer. 655 F. Supp. 1081, at 1083 (E.D. La. 1987). The BMW's odometer read 54,124 miles at the time of sale. *Id.* Thereafter, the odometer failed to register additional mileage and was determined to be inoperable and incapable of recording mileage. *Id.* Prior to the sale, the defendant had possession of the BMW for six months and performed extensive repairs on the vehicle. *Id.* at 1083-1084. The court applied the standard in *Nieto* and found that the dealer was liable. *Id.* at 1085. The court stated that the defendant "had possession of the car for six months prior to the sale to [plaintiff], and had performed extensive repairs, which should have brought to light the fact that the odometer was nonfunctional, and what that fact implied about the accuracy of its reading." *Id.*

Similarly, in the case of *Auto Sports, Inc. v. Bruno Auto Dealers, Inc.*, the defendant dealer sold a vehicle to the plaintiff dealer with incorrect mileage. 721 F. Supp. 63 (S.D.N.Y. 1989). The defendant sought summary judgment, arguing that it had no knowledge that the odometer had been tampered with, nor did they claim to know that the stated mileage was incorrect. *Id.* at 65. Here, the Court also rejected a strict construction of the statute that would require proof of actual knowledge. *Id*. at 65-66. The Court referenced legislative history, stating that "the test of 'knowingly' was incorporated so that the auto dealer with expertise now would have an affirmative duty to mark 'true mileage unknown' if, in the exercise of reasonable car, he would have reason to know that the mileage was more than that which the odometer recorded." *Id.* (quoting 1972 U.S. Code, Cong. & Adm. News, 3960, 3971-72).

The Court also stated that "one may not consciously avoid learning that the true mileage of a vehicle is not as it appears on the odometer. Factual circumstances such as would alert a seller to the probable inaccuracy of the odometer give rise to a duty to further investigation." *Id.* at 66. The

11

court ultimately rejected the defendant's motion for summary judgment, citing the need for additional discovery to determine whether the defendant's conduct was reasonable under the circumstances. *Id.; see also, Fowler v. Elegant Auto Finance, LLC,* 446 F. Supp. 3rd 966 (M.D. Fla. March 17, 2020).

Most recently, in *Elegant Auto Finance*, much like in the instant case, a buyer of a used motor vehicle brought action against the seller under the Federal Odometer Act, alleging the odometer disclosure at the time of sale indicated the vehicle's "actual mileage" but the post-sale odometer disclosure indicated that the mileage at time of sale was higher, and the higher number was "not the actual mileage." *Id*. at * 968. In denying summary judgment for the seller, Senior Judge James Moody of the Middle District of Florida opined:

> Under the Act, "a transferor who lacks actual knowledge that the odometer reading is incorrect may still have a duty to state that the actual mileage is unknown." *Nieto v. Pence*, 578 F.2d 640, 641 (5th Cir. 1978). "If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence." *Id.* at 642. In other words, "A transferor may not close his eyes to the truth." *Id.* So a transferor who lacks actual knowledge can still be liable under the Act if the buyer demonstrates "constructive knowledge, recklessness or gross negligence" by the transferor. *Coleman v. Lazy Days RV Ctr., Inc.*, No. 8:05-CV-930-T-17TBM, 2007 WL 2021832, at *2 (M.D. Fla. July 12, 2007).
>
> *Id.* * 969 (footnote omitted)

The Dealership knew or should have known that the mileage of the Vehicle was not the mileage disclosure in the various Mileage Representations made to Ms. Desamours. But it made a false disclosure of the mileage and sold an undisclosed wrecked car with a salvage branded title and an inaccurate odometer.

### *6. The false mileage disclosures and failure to show the transfer title to Ms. Desamours entitle Ms. Desamours to remedies under the Odometer Act.*

The Odometer Act provides for treble actual damages or $10,000. 49 U.S.C. § 32710(a). Ms.

Desamours was certainly harmed by buying a car with a salvage branded title and tampered odometer. Indeed, she does not have to prove any actual damages to recover the minimum statutory amount. *See, Att'y Gen. of Maryland v. Dickson*, 717 F. Supp. 1090 (D. Md. 1989); *EVehicles v. Paradise Motors*, Inc., 721 F. Supp. 250 (N.D. Cal. 1989) *Williams v. Toyota of Jefferson, Inc.*, 655 F. Supp. 1081 (E.D. La. 1987). The plaintiff need only prove that the defendant violated the Act with an intent to defraud.

Ms. Desamours seeks an award of statutory damages of $10,000 under the Act.

**B. THE DEALERSHIP VIOLATED THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY SELLING A WRECKED, SALVAGED CAR WITH AN INACCURATE ODOMETER WITHOUT DISCLOSURE TO MS. DESAMOURS.**

In 1973, the Florida legislature created the FDUTPA. Ch. 73–124, § 1, at 188–195, Laws of Fla. (codified at §§ 501.201–501.213, Fla. Stat. (1973)). In doing so, it expressly mandated in Section 501.202 that this new legislation was to "be construed liberally to promote" three distinct but interrelated "policies":

(1) To simplify, clarify, and modernize the law governing consumer sales practices.

(2) To protect consumers from suppliers who commit deceptive and unfair trade practices.

(3) To make state regulation of consumer sales practices consistent with established policies of federal law relating to consumer protection.

To further these policy objectives, the legislature declared that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" were unlawful. § 501.204(1). Although it did not define what it meant by "unfair or deceptive acts or practices," the legislature expressed its intent that "in construing subsection (1) of this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission

and the federal courts relating to s.5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1))," which prohibits such acts or practices in the federal domain.

To effectuate these underlying policy considerations, the legislature conferred on "a consumer who has suffered a loss as a result of a violation" of the FDUTPA the right to bring an "individual action" to "recover actual damages, plus attorney's fees and court costs." § 501.211(2). It limited such damages, however, to "the property that is the subject of the consumer transaction" and specifically excluded claims for personal injury or death or damage to other property. § 501.212(3). The legislature specifically defined the type of property which is the subject of such a transaction for which actual damages were recoverable to include "an item of goods, a consumer service, or an intangible." § 501.203(1). It further provided that a consumer who prevails in civil litigation brought under the FDUTPA was entitled to receive reasonable attorney's fees and costs. § 501.2105. Finally, the legislature expressed its clear intent that the remedies afforded by this new legislation were to be "in addition to remedies otherwise available for the same conduct under state or local law." § 501.213(1). *Delgado v. J.W Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2nd 602 (Fla. 2nd DCA 1997).

Stated otherwise, the obvious purpose of the act is to protect the unwary from being "conned." *Black v. Dept. of Legal Affairs*, 353 So. 2nd 655, 656 (Fla. 2nd DCA 1977). As shown by the proofs filed herewith, Ms. Desamours was conned into buying a rotten car. A laundry list of the *per se* violations of FDUPTA are set forth in the Complaint. (Compl.- ¶ 62-69).

The damages provision of the FDUPTA entitles consumer to recover damages attributable to diminished value of goods or services received. *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati,* 715 So.2d 311, 313-314 (Fla. 4th DCA 1998).

14

The Vehicle was inspected by a reputable auto appraiser, Stuart Raskin ("Mr. Raskin") of South Florida Auto Appraisers, to determine the extent of my loss. After inspection of the Vehicle, Mr. Raskin prepared a Motor Vehicle History and Resultant Monetary Impact Report ("Expert Report"). Pursuant to the Expert Report, Mr. Raskin opined that as a result of the Vehicle having been branded "rebuilt" with a declared inaccurate odometer reading, Ms. Desamours suffered a forty percent (40%) loss in the value of a comparable vehicle with no derogatory history. [Raskin Decl.-¶5-8].

Ms. Desamours suffered a financial loss of at least $4,964.19, which sum represents a 40% reduction from the vehicle sales price of $12,410.48 ("Diminution Damages"). The Diminution Damages are in addition to the statutory damages under the Odometer Act.

### III. CONCLUSION

In accordance with the above argument, Plaintiff, Cristina Desamours, seeks judgment against Defendant, Impact Auto Depot, Inc., a Florida corporation, as follows:

A. an award of statutory damages in the amount of $10,000 under the Odometer Act;

B. an award of actual damages of $4,964 under the Florida Deceptive and Unfair Trade Practices Act; and

C. an award of attorney fees and costs pursuant to 49 U.S.C. §32710(b) and Fla. Stat. §501.2105 in an amount to be determined upon subsequent application by Plaintiff.

Respectfully submitted,

*/s/ Robert W. Murphy*
ROBERT W. MURPHY
Florida Bar No. 717223
440 Premier Circle
Suite 240
Charlottesville, VA 22901
T: (954) 763-8660
F: (954) 763-8607 (FAX)
rwmurphy@lawfirmmurphy.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 21, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being furnished, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing as follows:

**By First Class Mail**
Impact Auto Depot, Inc.
c/o Mr. Gerry Perez
18264 S.W. 149th Place
Miami, FL 33187

*/s/ Robert W. Murphy*
Attorney